FILED

AUG 1 7 2001

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
             DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| VS. | § | NO. A 00 CA 085 SS |
| | § | |
| AMERICAN BLAST FAX, INC., *et al.* | § | |

## FINDINGS OF FACT and CONCLUSIONS OF LAW

BE IT REMEMBERED on the 16th day of March 2001 the Court called the above-styled cause for trial. The plaintiff appeared by representation of counsel. All defendants appeared by representation of counsel, and defendants Greg and Michael Horne also appeared in person. All parties announced ready for trial and, all parties having waived their rights to trial by jury, a one day trial proceeded before the Court on March 16, 2001.

This case is brought by plaintiff the State of Texas against defendants American Blastfax, Inc. ("Blastfax") and Blastfax's two officers and directors, Greg and Michael Horne, alleging causes of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.41 ("DTPA"). On February 9, 2001, the Court partially granted the State's summary judgment motion, and held defendant Blastfax had violated the TCPA by sending unsolicited intrastate fax advertisements within Texas, and had violated the DTPA by misleading Texas consumers about the legality of its business. The issues at trial were the amount of damages and the scope of injunctive relief, if any, for Blastfax's violations, and whether the individual defendants could be held personally liable for these violations.

74

## Findings of Fact

Defendant American Blastfax, Inc. is a Texas corporation located in Addison, with about fifteen employees. Since 1997 its primary business has been sending fax advertisements on behalf of third parties within Texas. All the fax advertisements sent by Blastfax are intrastate. *See, e.g.,* Defendants' Pretrial Order [#60], at 1. Defendant Greg Horne is the president of Blastfax. He maintains the financial records, oversees the sales operations, programs computers to send faxes, and selects the actual programs used to send the fax advertisements. His father, defendant Michael Horne, is the vice president of Blastfax. He has essentially the same duties as Greg Horne, although he deals more with Blastfax's daily computer activities. Since 1997, Greg and Michael Horne have been Blastfax's only two officers, directors and shareholders (each owns fifty percent of Blastfax), and are solely responsible for developing Blastfax's business plan. In addition, they are responsible for overseeing and directing all the day-to-day operations of Blastfax.

Blastfax's main asset is its database – its list of fax numbers for potential customers. When a company hires Blastfax, Blastfax uses this database to fax the third-party's advertisements.[1] Greg and Michael Horne are primarily responsible for developing the database, by taking fax numbers from phonebooks, computer programs and public sources, and by purchasing lists of fax numbers from third parties. The two of them decide what numbers to ultimately include in the database, and what software program to use in faxing the advertisements. Typically, if a new name and fax number is added to the Blastfax database, the defendants do not contact this person or

---

[1] Blastfax charges five to eight cents per page for fax advertisements, and the minimum purchase required is 5,000 fax advertisements for $400. *See* Plaintiff's Ex. 1, at ABF 0252. Blastfax also occasionally sends its own advertisements to the numbers on its database.

otherwise inform the person that he/she is now part of the database. Much less frequently, a name and number will be added to the database when a person contacts Blastfax. At least half the persons on Blastfax's database did not consent to be placed on the database. According to the defendants, Blastfax has no way to determine which persons have given such consent.

In February 2000, the State filed this lawsuit. Prior to filing, the State put the defendants on notice that they were violating the TCPA every time they sent an unsolicited intrastate fax advertisement. At the time, the Hornes realized the TCPA's heavy fines could bankrupt Blastfax, but they decided to accept this risk and did not alter their business.

In April 2000, the defendants moved to dismiss this lawsuit, arguing the TCPA does not apply to intrastate faxes. After extended briefing by the parties, the Court denied the motion to dismiss on October 5, 2000. *See Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085 (W.D. Tex. 2000). In the order, the Court held, as a matter of law, that the TCPA applies to intrastate faxes. The defendants all received notice of this order. Nonetheless, they continued to send unsolicited intrastate fax advertisements in Texas. *See, e.g.,* Plaintiff's Ex. 7 and 8. They even sent unsolicited fax advertisements to the Texas Attorney General's office. *See* Plaintiff's Ex. 2, at ABF 1046-71 and 1646-57; Plaintiff's Ex. 3, at ABF 831-51 and 1661-66; Plaintiff's Ex. 4, at ABF 124-49 and 1673-80; Plaintiff's Ex. 5, at ABF 1211-13, 1633-45 and 1727-32. The defendants testified at trial that, after October 5, 2000, they attempted[2] to send an average of five fax advertisements per month to the approximately 500,000 persons in the database – *i.e.,* about

---

[2] Not every fax sent reached its intended recipient. According to Greg Horne, about 85% of the faxes were actually received. Michael Horne testified the percentage was not quite this high. The Court finds the testimony supports a finding that 75% of the fax advertisements sent by the defendants were actually received.

2.5 million fax advertisements per month. *See also* Defendants' Trial Brief [#64], Ex. A (Affidavit of Greg Horne), at ¶ 2. The defendants further testified at trial that at least half of these faxes were sent to persons without their consent or permission, and with whom the defendants had no established business relationship. *See also* Plaintiff's Summary Judgment Motion [#44], Ex. B, at 72. In addition, the defendants testified at trial that, despite the Court's order (and with the encouragement of counsel[3]), they continued to tell their customers the TCPA did *not* apply to intrastate faxes, and did not inform their customers of the Court's October 5, 2000 order. *See also id.*, Ex. B, at 71.

In early December 2000, Blastfax contracted with the Dallas Mavericks basketball team to send fax advertisements on behalf of the Mavericks. *See* Plaintiff's Ex. 14, at ABF 1792. At some point, the applicability of the TCPA to these faxes became an issue. On December 14, 2000, Blastfax sent a fax to the Mavericks stating that the TCPA did *not* apply to the advertisements faxed by Blastfax on behalf of the Mavericks. *See id.* at ABF 1794. Attached to the fax was a provision of a Texas state law governing fax transmissions, and a March 2000 advice letter from counsel, concluding the TCPA does not apply to intrastate faxes. *See id.* at ABF 1795-1807. The fax did not include, and did not mention, the Court's October 5, 2000 order.

On February 9, 2001, the Court partially granted the State's summary judgment motion. The Court reiterated its holding that the TCPA applies to intrastate faxes, and found Blastfax had violated the TCPA by sending unsolicited intrastate faxes in Texas. The Court also held Blastfax had violated the DTPA by misleading Texas consumers about the legality of the defendants'

---

[3] In a November 19, 2000 letter to a complaining fax recipient, Blastfax's counsel stated that intrastate unsolicited fax transmissions "are not prohibited by either federal or Texas state law." *See id.*, Ex. E, at Tab 1. The letter did not mention the Court's October 5, 2000 order.

business. The Court reserved for trial the amount of damages and whether defendants Greg and Michael Horne were personally liable for these violations.

This time, the defendants began telling their customers about the Court's order. However, the defendants still continued to send unsolicited intrastate fax advertisements in Texas until March 15, 2001 (the day before trial). *See, e.g.,* Plaintiff's Ex. 9, 10 and 13. They also continued to send unsolicited fax advertisements to the Texas Attorney General's office. *See* Plaintiff's Ex. 2, at ABF 1658-60 and 1720-21; *see also* Plaintiff's Ex. 3, at ABF 1667-69 and 1722-26; Plaintiff's Ex. 4, at ABF 1681-83 and 1737; Plaintiff's Ex. 5, at ABF 1733-36. Some of these faxes identified Blastfax as the sender, *see* Plaintiff's Ex. 13, at 1770, while others did not. *See id.* at 1771, 1773 and 1775. In addition, some of these faxes did not indicate the time they were sent. *See id.*

The day before trial, March 15, 2001, the defendants claim to have laid off all Blastfax employees and shut down the company. In addition, defendants Greg and Michael Horne allegedly filed (or were preparing to file) petitions for personal bankruptcy. Because a lawsuit filed by a governmental unit to enforce and seek damages under its consumer protection laws is not subject to the bankruptcy code's automatic stay, this case proceeded to trial on March 16, 2001.[4]

---

[4] Although a bankruptcy filing normally stays civil litigation, under 11 U.S.C. § 362(b)(4) the automatic stay provision does not apply to "an action or proceeding by a governmental unit . . . to enforce [its] police or regulatory power." The Fifth Circuit has stated this exception applies to lawsuits where the government "is suing a debtor to prevent or stop violation of . . . consumer protection . . . laws, or attempting to fix damages for violation of such a law." *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1182-83 (5th Cir. 1986), *cert. denied*, 107 S. Ct. 3228 (1987). Accordingly, the automatic stay provision of the bankruptcy code is inapplicable here.

## Conclusions of Law

### I.   TCPA Violations

#### A.   Personal Liability

As noted, the Court has already held defendant Blastfax violated the TCPA by sending intrastate fax advertisements in Texas without the recipient's consent or permission, and to recipients with whom the defendants had no established business relationship. The Court further finds defendants Greg and Michael Horne are personally liable for these violations, and the three defendants shall be jointly and severally liable for the total TCPA damages awarded in this lawsuit.

The defendants contend that under the TCPA "[p]ersonal liability cannot be imposed on an officer of a corporation simply because of his official position." *See* Defendants' Pretrial Brief, at 4. The defendants also contend the TCPA "does not provide for lawsuits against officers pertaining to corporate acts." *See* Defendants' Proposed Findings of Fact and Conclusions of Law, at 7. The State counters it is not suing the individual defendants simply because of their status as officers of Blastfax, but rather is suing them "based on their own conduct which is in violation of the [TCPA]." *See* Plaintiff's Trial Brief [#62], at 1. The State argues Greg and Michael Horne are personally liable because they did far more than simply sit on the Blastfax board while the company violated the TCPA – they actually committed the conduct that violated the TCPA, and/or they actively oversaw and directed this conduct. The Court agrees with the State.

Under the TCPA, a state attorney general may bring an action against "any person" who has violated the statute and recover monetary damages for the violation(s). *See* 47 U.S.C. §§ 227(f)(1) and (b)(1). The TCPA does not define "person," and is silent on who may be liable for the money damages. The Court finds no reason to interpret "person" to include only corporations, as defendants

apparently urge. Indeed, if an individual sends unsolicited fax advertisements on his own behalf (and has no affiliation with a corporation), he surely would face personal liability under the TCPA.

No court appears to have examined whether an officer, acting on behalf of his corporation, may be personally liable under the TCPA. As a general matter, if a corporation is found to have violated a federal statute, its officers will not be personally liable solely because of their status as officers. *See United States v. Sexton Cove Estates, Inc.*, 526 F.2d 1293, 1300 (5th Cir. 1976) (finding corporate officer was not personally liable under Rivers and Harbors Act, because Act did not provide officer liability for judgments "obtained against *the corporation*") (emphasis added). However, if the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. *See United States v. Pollution Serv. of Oswego, Inc.*, 763 F.2d 133, 134-35 (2nd Cir. 1985) (finding officers liable under Rivers and Harbors Act for direct, personal involvement in illegal dumping; distinguishing *Sexton Cove* as involving liability "premised solely on [defendants'] corporate offices or ownership"), *cert. denied*, 106 S. Ct. 605 (1985); *see also Citronelle-Mobile Gathering, Inc. v. Herrington*, 826 F.2d 16, 25 (Temp. Emer. Ct. App. 1987) ("[P]ersonal responsibility for corporate liability may attach when the individual's wrongful conduct causes the violation of a statute and accompanying regulations such as the crude oil pricing laws."), *cert. denied*, 108 S. Ct. 327 (1987); *BEC Corp. v. Environmental Protection Agency*, --- A.2d ---, 2001 WL 739947 (Conn. 2001) (discussing "an emerging body of federal case law holding individual corporate officers liable for violations of federal environmental laws when those officers either participated in those violations, [or] controlled or supervised the

corporate activities that resulted in the violations"). As the Fifth Circuit stated in a trademark infringement[5] case:

> Appellees seem to support [their] position on the ground that to hold the individuals liable for the actions of the corporation would require a 'piercing of the corporate veil.' In point of fact appellees have the cart before the horse. There can be no doubt but that a trademark, like a patent, can be infringed by an individual. It is infringed when an individual performs the act or does the things that the patent or trademark law protects against. The fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does not relieve the individuals of their responsibility.

*Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968). *See also Engineering Dynamics, Inc. v. Structural Software*, 26 F.3d 1335, 1349-50 (5th Cir. 1994).

The cases analyzing statutory liability for corporate officers generally refer to the more established rule in tort cases against officers. *See, e.g., Citronelle-Mobile*, 826 F.2d at 25 (noting "the parallel between conduct which violates general principles of tort law, and conduct which infringes rights secured by statutes"). The "well-settled" tort rule provides that "when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "[t]he thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Co.*, 752 F.2d 168, 174 (5th Cir. 1985) (citing *Escrude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)).

---

[5] Like the TCPA, the Lanham Trademark Act generally imposes liability on "any person" who violates the Act. *See* 15 U.S.C. §§ 1117, 1120 and 1125(a).

The Court finds the above principles applicable to the TCPA – that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and wilfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasively argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" and the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court holds defendants Greg and Michael Horne are jointly and severally liable with defendant American Blastfax, Inc., for all TCPA damages in this lawsuit.

### B. Wilfulness

The TCPA provides that, when a State brings a claim, "[i]f the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding

sentence." *See* 47 U.S.C. § 227(f)(1). The Federal Communications Commission has interpreted "willful or knowing" under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute. *See In re Intercambio, Inc.*, 3 F.C.C.R. 7247, 1988 WL 486783 (FCC 1988). The Court finds this is the proper standard for a finding of wilful or knowing conduct under the TCPA's treble damages provision.[6]

Here, the defendants were well-aware of the TCPA when they began sending unsolicited intrastate fax advertisements in Texas in 1997. Then, after they knew on October 5, 2000 that this conduct reasonably could violate the TCPA, the defendants made a knowing, wilful, deliberate and calculated decision to continue sending intrastate fax advertisements without the recipients' consent and without having an established business relationship with the recipients. Indeed, in his deposition, Greg Horne testified as follows:

> Q: Judge Sparks' [October 5, 2000] order held that the TCPA applies to intrastate practices. In light of that holding, why have you not changed your practices regarding what's disclosed?
>
> A: We just feel like that we didn't want to change it.

---

[6] The defendants argue the standard should be a showing of bad intent, not mere knowledge of a violation. The defendants cite no authority directly on point for this argument, but instead refer to the standard for a "willful" violation of the ADEA, which requires a showing that the defendant violated the statue with the knowledge "and belief" that its conduct was a violation, or that it "recklessly disregarded" the statute. The defendants argue there is no evidence they ever "believed" they were violating the TCPA, and at all times they were acting in good faith. The Court rejects the defendants' proposed standard, lifted for no apparent reason (other than that it supports the defendants' position) from ADEA case law. In addition, even under this standard, after the Court's February 9, 2001 order, the defendants certainly acted with "reckless disregard" for the TCPA by continuing to send unsolicited intrastate fax advertisements within Texas.

*See* Plaintiff's Summary Judgment Motion [#44], Ex. B, at 71. Then, on February 9, 2001, the defendants knew their conduct in fact *did* violate the TCPA, yet they still chose not to alter their business practices. The Court therefore finds the defendants wilfully and knowingly violated the TCPA, from February 9, 2001 through March 15, 2001.

The defendants contend they reasonably relied on other case law and a letter from a Texas representative, in continuing their business practices. This argument is wholly unpersuasive. First, the defendants claim their conduct was excusable because the Court's October 5, 2000 ruling was not "binding authority." *See* Defendants' Pretrial Order [#60], at 5-6. The Court has already rejected this argument. *See* February 9, 2001 Order, at 4 n.2. Moreover, the defendants do not contest that the Court's February 9, 2001 order, holding Blastfax violated the TCPA and DTPA, was binding authority. *See* Defendants' Pretrial Order, at 5-6; Defendants' Proposed Findings of Fact and Conclusions of Law, at 5-6. Second, the defendants claim their violations were not knowing or wilful because of the Fifth Circuit's 1997 decision in *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507 (5th Cir. 1997). The Court long ago rejected this argument, and stated that *Chair King* had no bearing on the TCPA's applicability to intrastate faxes in a lawsuit brought by the attorney general. *See* October 5, 2000 Order, at 5.[7] Finally, the defendants point to statements by Texas state representative Tony Goolsby, the sponsor of the House version of a 1999 Texas law governing fax transmissions. Specifically, they rely on a September 2000 letter from Goolsby, *see* Defendant's Ex. 12, and an affidavit from Goolsby stating that it "was never the

---

[7] At trial, defendants' counsel stated its clients relied on a "plethora" of law showing the TCPA did not apply to intrastate faxes. Perhaps defendants' counsel has a unique definition of the word plethora. In reality, every published opinion to address the issue of whether the TCPA applies to intrastate faxes, and every legal commentator, has concluded the TCPA *does* so apply.

Legislature's intent to allow the TCPA to regulate intrastate facsimile transmissions." *See* Defendants' Trial Brief, Ex. C. The post-hoc statements of a single state legislator, even the sponsor of a bill, do not amount to the "intent" of the entire legislature that actually passed the bill. In addition, the TCPA was written and passed by the United States Congress, not the Texas legislature. The defendants' arguments on this issue are overruled.

### C. Damages

As an initial matter, the defendants contend the State did not introduce sufficient evidence of damages. *See* Defendants' Proposed Findings of Fact and Conclusions of Law, at 4. However, the defendants themselves testified to the number of unsolicited intrastate fax advertisements they sent since October 5, 2000 as well as the number of these faxes actually received. The State also presented undisputed documentary evidence of unsolicited intrastate fax advertisements sent by the defendants from October 5, 2000 up to the day before trial. And the defendants presented evidence from their expert that the average cost of receiving an unwanted fax is seven cents per page. *See* Defendants' Trial Brief, Ex. B, Tab 6. The Court finds this evidence sufficient to award damages.

The TCPA provides that, when a State brings a claim, it may recover "actual monetary loss or receive $500 in damages for each violation." *See* 47 U.S.C. § 227(f)(1). Here, the undisputed evidence shows the defendants violated the TCPA from October 5, 2000 to March 15, 2001, and in that timeframe sent 2.5 million fax advertisements per month. The undisputed evidence shows that at least 50% of these faxes were sent without the recipients' consent and without having an established business relationship with the recipients. The Court also found that 75% of these faxes actually were received. Thus, the Court finds the defendants violated the TCPA a total of 937,500

times per month (2.5 million multiplied by 50% and then by 75%) from October 5, 2000 to March 15, 2001.

Although the TCPA provides for liquidated damages of $500 for each violation, the Court finds it would be inequitable and unreasonable to award $500 for each of these violations.[8] The Court therefore will interpret the provision as providing for "up to" $500 per violation. Using the undisputed expert evidence submitted by the defendants that each unwanted fax page costs the recipient seven cents, the Court finds a reasonable award, in this case, is seven cents per violation.

Seven cents per violation, multiplied by 937,500 violations, amounts to $65,625 per month in damages. For the four-month period from October 5, 2000 to February 8, 2001, this amounts to $262,500 in damages. Because the defendants' conduct was wilful and knowing for the final month, from February 9, 2001 to March 15, 2001, the Court exercises its discretion under the TCPA and trebles these damages, to $196,875. The defendants' total TCPA damages, therefore, are $459,375.

The State also seeks attorneys' fees under TEX. GOV'T CODE § 402.006(c). This provision provides that "[i]n a case in which the state is entitled to recover a penalty or damages the attorney general is entitled, on behalf of the state, to reasonable attorney's fees and court costs." The plain language of this statute entitles the State to attorneys' fees here. The Court finds the State's reasonable attorneys' fees in this case to be $20,000.

## II.  DTPA Violations

On February 9, 2001, the Court held Blastfax violated the DTPA by: (1) representing that goods or services have approval which they do not have; and (2) failing to disclose information

---

[8] This would amount to an award of about $ 2.34 *billion* (937,500 multiplied by 5 months and then by $500) against two individuals and a fifteen-employee company.

- 13 -

known at the time of a transaction "if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." *See* DTPA §§ 17.46(b)(5) and (b)(23) (Vernon Supp. 2001).[9] Specifically, the Court found "Blastfax – by express representations and by failing to disclose information about the TCPA and/or information about the Court's October 5, 2000 order – told potential customers and fax recipients in Texas that Blastfax's unsolicited intrastate fax advertisements are not unlawful in any manner." *See* February 9, 2001 Order, at 8.

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 10-11.[10] For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. *See, e.g., Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.–Houston [1st Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious or fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation").

In an action by the attorney general, the DTPA allows a civil penalty of "not more than $2,000 per violation, not to exceed a total of $10,000." *See* DTPA § 17.47(c) (Vernon Supp. 2001). The State contends that after October 5, 2000, the defendants violated the DTPA by "fail[ing] to

---

[9] The State also argues the defendants violated the DTPA on the theory that the act of faxing advertisements itself is an "implied misrepresentation" that the defendants' business was legal. *See* Plaintiff's Trial Brief [#62], at 7-8. However, the Court finds the State failed to present adequate evidence that this latter practice constituted a misleading or deceptive act under the DTPA.

[10] The State does not contend the defendants wilfully violated the DTPA.

- 14 -

disclose to at least 30 customers and potential customers any information about the TCPA." *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 9-10. The State seeks $10,000 in civil penalties for the defendants' DTPA violations. *See id.* at 3. However, the State presented no evidence of 30 DTPA violations at trial. At best, the trial testimony and record evidence establish only three such violations. *See* Plaintiff's Ex. 14; Plaintiff's Summary Judgment Motion [#44], Ex. E, at Tab 1; and *id.*, Ex. D. The remaining testimony established only that the defendants had a general policy not to inform customers about the TCPA. Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA.[11]

### III. Injunction

Finally, the State seeks a permanent injunction against the defendants. The TCPA provides that, in lawsuits brought by the attorney general, "[u]pon a proper showing, a permanent or temporary injunction . . . shall be granted without bond." *See* 47 U.S.C. § 227(f)(2). The DTPA provides that the attorney general may bring an action for a permanent injunction to enjoin any "method, act, or practice" that violates the DTPA, and "such injunctive relief shall be issued without bond." *See* DTPA §§ 17.47(a) and (b) (Vernon Supp. 2001). The State proposes a four-page injunction against the defendants; the defendants agree to only five paragraphs of this

---

[11] The DTPA provides that "no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice." DTPA § 17.43. However, the defendants' DTPA violation conduct – making misrepresentations regarding the TCPA and the legality of the defendants' business – is separate from their TCPA violation conduct – sending unsolicited intrastate fax advertisements.

injunction. *See* Defendants' Proposed Findings of Fact and Conclusions of Law, at 2-3. The Court finds an injunction is warranted in this case, and holds the defendants are enjoined from:

    a.    Using any telephone facsimile machine, computer, or other device to send an advertisement, either on the defendants' own behalf or on behalf of another person, to a telephone facsimile machine in Texas, without the recipient's prior express invitation or permission;

    b.    Failing to include on any facsimile advertisement sent, even if sent with the express consent of the recipient, information identifying the entity sending the facsimile, along with the date and time the facsimile is sent;[12]

    c.    Using any telephone facsimile machine, computer or other device to make any transmission to a telephone facsimile machine in Texas if the recipient has previously requested that the defendants not send any further transmissions to that telephone number;

    d.    Sending or offering to send any fax advertisement on behalf of another person to a facsimile machine in Texas without disclosing to such person the existence of the TCPA and this Court's rulings in this lawsuit;

    e.    Misrepresenting the defendants' compliance with the TCPA;

    f.    Representing, directly or by implication, that this Court or the Texas Attorney General has approved of the defendants' practice of sending unsolicited intrastate fax advertisements within Texas; and

    g.    Entering into, forming, organizing, or reorganizing into any partnership, corporation, sole proprietorship or any other legal structure for the purpose of avoiding compliance with the terms of the Orders and Judgment in this case.

---

[12] The Court notes this paragraph is not derived from the TCPA or the DTPA, but rather is a requirement in TEX. BUS. & COM. CODE § 35.47. However, both parties agreed to this paragraph of the injunction verbatim.

In addition, the defendants are ordered to maintain documentation evidencing the express prior invitation or permission of every person in Texas to whom they send a fax advertisement, whether the fax advertisement is sent on the defendants' own behalf or on behalf of another person.[13]

In accordance with the foregoing, the Court enters the following orders:

IT IS ORDERED that plaintiff the State of Texas TAKE JUDGMENT in the total sum of $465,375.00 jointly and severally from defendants American Blastfax, Inc., Greg Horne and Michael Horne, plus costs and interest at the prescribed statutory rate, plus $20,000 in attorneys' fees; and

IT IS FURTHER ORDERED that an injunction against the defendants is issued as described in this order.

SIGNED this the 17th day of August 2001.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[13] The Court did not adopt several of the paragraphs in the State's proposed injunction for the following reasons: The State's proposed paragraphs (b) and (c) deal with *inter*state faxes. There is no evidence the defendants ever have or intend to send fax advertisements outside Texas. While unsolicited interstate fax advertisements are certainly prohibited by the TCPA, so are many other acts not at issue in this lawsuit. The State's proposed paragraph (h) would require the defendants to disclose that their customers allegedly have been sued under the TCPA. There was no evidence of this allegation in the lawsuit. The State's proposed paragraph (j) is adequately covered by paragraph (a) of the Court's injunction. Finally, the State's paragraphs (m) and (n) would prohibit the defendants from selling their database or software to third parties that the defendants should know will violate the TCPA. There was no evidence that the defendants have done or intend to do so.